JAMES W. MAY and Wife *v.* CHARLES J. SULLIVAN.

1. VENDOR AND VENDEE: BILL TO COMPEL CONVEYANCE OF TITLE: CASE IN JUDG-MENT.—S. bought a tract of land, and took a bond for title upon payment of the purchase-money, for which he executed his note. S. afterwards sold a portion of the land to E. upon the same credit on which he had purchased, and executed a bond to make a title, upon payment of the purchase-money. M. was afterwards admitted as equal partner in the purchase with S., in the remainder not sold to E.; and the joint notes of S. and M., and a title-bond to them, were substituted in the place of the original notes and bond given. Afterwards, S. assigned his interest in the title-bond to M., who agreed to pay the joint notes for the purchase-money, and to make a title to that portion sold to E., when the land was paid for. The right to the proceeds of the notes of E. given for the purchase-money, was reserved to S., who afterwards indorsed two of the notes to others, and retained the one last falling due. M. procured a title to the land, and paid the purchase money due by him and S., before the last instalment fell due, and before the last note of E. fell due, but refused to make a title to E. on the request of S. S., therefore, filed his bill to compel M. to make the title to E. Held, that the bill was prematurely filed.

2. SAME: CHANCERY: PARTIES.—Where a vendor, who has executed a bond to make a title upon payment of the purchase-money, has transferred one of the notes given for the purchase-money, and retained the other, he must, in a bill filed to procure the conveyance of the title (which is vested in a third party) to his vendee, in order to enable him to collect the purchase-money, make both the vendee and the holder of the transferred note parties defendant.

APPEAL from the Chancery Court of Oktibbeha county. Hon. J. S. Hamm, chancellor.

This was a bill in chancery, filed on the 6th day of May, 1859, in the names of C. J. Sullivan and John Erwin, as complainants. Afterwards, said Erwin appeared in open court, and stated that the bill had been filed without authority from him, and he, therefore, dismissed the bill so far as his rights were concerned.

The allegations of the bill, so far as they relate to the rights of complainant Sullivan, are, in substance: That in February, 1854, one Huffman, being the owner of a tract of land containing four hundred acres, and which is described in the bill, sold the same to one Estes for the sum of $4000; that Estes executed his four notes for the purchase-money, due respectively on the 1st of March, 1855, 1856,

1857, and 1858, and that Huffman executed his title-bond to make a deed when the purchase-money was paid ; that, in March, 1857, the said contract between Estes and Huffman being still unexecuted and unperformed, Estes sold the land to complainant Sullivan for $4000, payable in three equal annual instalments, on the 1st of March, 1858, 1859, and 1860, and the vendor executed his bond to make title on the payment of the purchase-money.

That on the said 5th of March, 1857, the said Sullivan sold forty acres of said tract to said John Erwin, for $620, payable in three equal annual instalments, and falling due respectively on the 1st of March, 1858, 1859, and 1860, and Sullivan executed his bond to Erwin, "to make title upon payment of the purchase-money."

That afterwards, on the 24th of August, 1857, an agreement was entered into between said Estes and said Sullivan, and one James W. May (one of the defendants), by which May was admitted as an equal partner with Sullivan in the purchase from Estes, except as to the land sold by Sullivan to Erwin ; and in pursuance of that agreement, Estes executed a bond for titles to Sullivan and May, in lieu of the one theretofore executed to Sullivan, and embracing the whole of the four hundred acres, and Sullivan and May executed their three notes, for the same amounts and falling due at the same times as the notes of Sullivan to Estes, and the same were delivered to said Estes, in place of the said notes of Sullivan ; that on the same day, May executed the following instrument to Sullivan: "I have no interest in the forty acres of land C. J. Sullivan sold to John Erwin. August 24th, 1857.    James W. May."

It is further alleged, that the said May " then understood and agreed, that he and your orator, Sullivan, would make a deed to said Erwin, when the said joint notes of your orator, Sullivan, and said May were paid, or as soon as they obtained a title themselves."

The bill further alleges, that on the 14th of September, 1857, Sullivan sold his interest in the said last-mentioned tract to his co-partner May, at a profit of $350; that May agreed to pay the joint notes of Sullivan and May to Estes, and Sullivan released and assigned his interest in the land to May; but that it was expressly understood that May was only to have an interest in the three hundred and sixty acres remaining after the said sale of forty acres to Erwin, and that Sullivan was to have the proceeds of said sale to

Erwin; and that it was further agreed between Sullivan and May, that May should make a title to Erwin to the said forty acres, as soon as he had paid Estes for the land, or received a title for the same, and in pursuance of said contract May executed the following instrument : " C. J. Sullivan has sold me his interest in the land bought of A. A. Estes, and I am to pay our joint notes given to said Estes, and when the land is paid for, I am to make John Erwin a title to the forty acres sold by Sullivan to him : in a word, I take Sullivan's place. Sept. 14th, 1857. Signed, James W. May."

It is further alleged that the joint notes of Sullivan and May to Estes have been fully paid by May, and that a decree has been rendered in the Court of Probates of Choctaw county, directing the administrator of Huffman, the vendor of Estes, to make a title to the whole of said land to the wife of said May; and that May had fraudulently assigned his interest to his said wife without valuable consideration, and with full notice on her part of Erwin's rights.

The bill further charges that May refuses, although requested, to make a title to Erwin for the forty acres sold to him, and now sets up a claim to the proceeds of the notes executed by Erwin to Sullivan; that Sullivan has transferred one of the notes to one Rogers, and another to Mazzard & Co., and that he is liable on his indorsement of the same. That the note last falling due is still held by Sullivan; that Erwin refused to pay the two first, and has been sued at law on the same by the indorsees; that Sullivan cannot comply with his bond to Erwin, by reason of the title being in Mrs. May, and that he will be liable and subject to a suit thereon, and will be delayed in the collection of the third note, unless May and wife are compelled to make title to Erwin, according to the agreement of May with Sullivan.

May and wife are made defendants to the bill, and the prayer is that they be compelled to make title to Erwin for the forty acres sold to him, and for general relief.

To this bill May and wife demurred on these grounds:

1. Want of equity on the face of the bill.

2. No such case is presented as entitles the party to the relief prayed for.

3. No tender of purchase-money is shown.

4. The bill is multifarious.

5. Want of proper parties.

The demurrer was overruled, and the defendants appealed.

*James T. Harrison* and *C. R. Crusoe*, for appellants,
Cited 12 Ala. R. 37; 11 Ib. 840; 26 Miss. R. 357; 30 Ib. 258;
32 Ib. 131; 13 S. & M. 48, 532; 7 Ib. 217; 3 Ib. 690.

*C. F. Miller*, for appellees.

1st. Defendants, May and wife, hold the naked legal title to the forty acres of land described in the bill of complaint, but they are not the real and rightful owners thereof, but by a court of chancery they will be considered as trustees of the legal title for the benefit of the person so entitled to the equity.

2d. A court of equity will compel them to relinquish and convey the legal title to such person or persons as may be entitled to call on them for such conveyance, under the terms of any subsisting agreement, or the terms, purposes, and true intent and meaning of the trust with which they are clothed as owners of the legal title.

3d. As Erwin is a stranger to the contract between Sullivan and May, and May and wife are not answerable to him, he (Erwin) cannot file a bill for a specific performance, or to compel May and wife to convey. But he would have a right to require Sullivan, his vendor or assignor, to file the bill, and procure the title in trust for him, Erwin.

4th. While Erwin was a proper party complainant to the bill as originally filed, he is not a necessary party, and his refusal to join, and the dismissal of the bill as to him at his instance, cannot prejudice the rights or affect the equity of Sullivan as against May, the same being entirely distinct from and independent of the contract made by Sullivan with Erwin, to which May was not a party, or privy in any manner. The special hardship of which Sullivan complains, and the equitable relief which he seeks, are matters in which neither Erwin nor any one else is interested. It does not appear but that Erwin is perfectly willing to rely on his legal remedies against Sullivan, consequently the decree might be moulded and formed so as to secure to Sullivan alone the relief specially adapted to his case. Erwin might come in as a party and get the benefit of

the decree directly; yet, he refuses, and such refusal cannot prejudice or in any manner hurt Sullivan.

HANDY, J., delivered the opinion of the court.

The bill in this case having been dismissed, as to the complainant Erwin, all the allegations contained in it, setting up any equity, and asking any relief in his behalf, must be disregarded, and the bill be taken as asserting the rights of Sullivan alone; and the demurrer must be considered as applicable to it in that aspect alone. So regarded, it is clear that the demurrer to it should have been sustained.

1. Sullivan had not been sued on the notes of Erwin, which he had transferred and indorsed, and may never be sued upon them. And it does not appear that Erwin is contesting his liability to pay them, or insisting upon his not being bound to pay them without a conveyance of the land to him. As to the note held by Sullivan, it was not due at the time the bill was filed, and will not be due until March, 1860. It is not alleged that he will refuse to pay it when it falls due, on the ground that he cannot receive a title to the land; and it cannot be assumed that he will do so. If he should refuse after the maturity of the note, it will then be time enough for Sullivan to complain, and take steps to compel a conveyance of the land by May, according to the contract alleged in the bill. According to the contract, as alleged, May is not bound to make the conveyance until the purchase-money shall be paid by Erwin; and for aught that is alleged in the bill, Sullivan cannot be injured until the last note shall become due, and Erwin shall refuse to pay it, because he cannot receive a conveyance of the land. At the time the bill was filed, and at this time, Sullivan is not injured; for he is not sued on the notes indorsed by him, and the note held by him is not yet due. He may never be sued, and the note held by him may be paid at maturity, or at the proper time, May and wife may convey the land, according to the alleged contract, to Erwin. A court of chancery cannot proceed upon the anticipation that these things will take place. Upon this view, the bill was prematurely filed.

2. If it was properly filed as to time, the equity set up by it would require Erwin to be made a party to it, either complainant

or defendant, in order that he might be required to pay the pur-
chase-money, and that the deed should be made to him.    But the
holders of the transferred notes, if they remain unpaid, should also
have been made parties, in order to receive payment.    For as the
rights of the parties are attempted to be adjusted in equity, all the
parties interested should be brought in, in order to a complete
settlement of all the rights involved in the matter.    And, indeed,
this is the equity upon which the bill mainly depends.    But here
again, it is plain that this end could not have been accomplished
when this bill was filed; because the last note for the purchase-
money was not then due, and a bill for the purpose of effecting the
payment of the purchase-money, and to that end of compelling
May and wife to convey the land according to the alleged contract,
could not be entertained before the purchase-money becomes due,
and before the obligation to convey is established.

Hence, upon the equitable ground upon which the bill mainly
rests, Erwin, and the holders of the other notes, should have been
made defendants.

For these reasons, the decree must be reversed, the demurrer
sustained, and the bill dismissed.